United States District Court
Southern District of Texas
**ENTERED**
April 15, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § CRIMINAL ACTION NO.<br>§ 4:20-cr-00582-1<br>§<br>§<br>§ |
| vs. | § JUDGE CHARLES ESKRIDGE<br>§<br>§ |
| HECTOR AARON RUIZ,<br>Defendant. | §<br>§ |

## MEMORANDUM AND ORDER DENYING
## MOTION TO REVOKE DETENTION ORDER

The motion to revoke the Magistrate Judge's detention order is denied. Dkt 27.

1. Background

Defendant Hector Aaron Ruiz was an officer with the police department in the small city of Arcola, Texas, a distant suburb southwest of Houston. Dkt 17 at 3. The Government alleges that, in violation of 18 USC § 242, he sexually assaulted one woman in August 2019 and another in November 2019 while acting in his official capacity following traffic stops. It further alleges that, in violation of 18 USC § 924(c)(1)(A), Ruiz possessed a firearm during both crimes of violence. And it alleges that, in violation of 18 USC § 1519, he obstructed justice by preventing audio recording of the November 2019 traffic stop. Dkt 1.

Ruiz was initially arrested in November 2019 by the Fort Bend County Sheriff's Office and charged with the second-degree felony of sexual assault. Dkt 22 at 4. Ruiz faces a sentence of between two and twenty years on that charge. He was released on bond in December 2019 pending trial and has yet to be tried. Dkt 24 at 36–37.

Ruiz was then indicted by a federal grand jury in November 2020 with reference to the charges stated above and arrested

shortly after. Dkts 1, 12. If convicted of the federal charges, application of the Sentencing Guidelines indicates that Ruiz now faces a very real possibility of life imprisonment. The base offense level is 30. See United States Sentencing Guidelines Manual § 2A3.1. Several enhancements could apply. For example, see USSG § 2A3.1(b)(1) (4-level enhancement for force or threats), § 2A3.1(b)(3) (2-level enhancement for victim in care, custody, or control), § 2A3.1(b)(5) (4-level enhancement for abduction), § 2H1.1(b)(1) (6-level enhancement for commission of offense under color of state law), § 3C1.1 (2-level enhancement for obstruction of justice). The offense level is thus a potential of level 48, where life imprisonment begins at level 43. Further potential exists for two additional mandatory five-year consecutive sentences under 18 USC § 924(c).

Magistrate Judge Sam S. Sheldon held an arraignment and detention hearing on November 24, 2020. Ruiz pleaded not guilty to all counts. Dkt 27-2 at 6. Judge Sheldon entered an order of temporary detention pending further hearing. Dkt 9. He then held a second detention hearing on November 30, 2020. The Government moved that Ruiz be detained, arguing that he poses a threat to the community. Dkt 27-3 at 68. Ruiz filed a memorandum in support of pretrial release following the hearings. Dkt 13. The Government responded. Dkt 14. Judge Sheldon issued an order of detention pending trial on December 8, 2020. Dkt 17. He included a detailed specification of reasons. Id at 3–4. The United States Probation Office also recommended detention. Id at 3.

Ruiz filed a motion to revoke the detention order on February 22, 2021, to which the Government responded. Dkts 27, 28. The parties argued the motion at a hearing on April 6, 2021. The record and evidence submitted at the hearings before Judge Sheldon were made part of the record. Counsel for Ruiz also offered two additional exhibits consisting of letters attesting to Ruiz's character, which were admitted without objection. See Dkts 27-5, 27-7.

> 2. Legal standard

The Bail Reform Act of 1984 provides, "If a person is ordered detained by a magistrate judge, or by a person other than

a judge having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 USC § 3145(b).

A district court must review such decision by the magistrate judge *de novo* and independently determine whether to order the defendant detained. See *United States v Reuben*, 974 F2d 580, 586–86 (5th Cir 1992), citing *United States v Fortna*, 769 F2d 243, 249 (5th Cir 1985). This may be based on evidence admitted at the original detention hearing, as well as any additional evidence offered on appeal. For example, see *United States v Galvan*, 2020 WL 4604502, *2 (SD Tex) (citations omitted); *United States v Farguson*, 721 F Supp 128, 129 n 1 (ND Tex 1989).

3. Analysis

The Court has closely reviewed the subject detention order. It has also independently reviewed all evidence and testimony before Judge Sheldon at the hearings on the 24th and the 30th of November 2020. Dkts 24, 25. The Court has also considered the motion to revoke the detention order and the arguments of counsel presented at hearing.

The Court finds and determines as follows upon *de novo* review.

a. Existence of rebuttable presumption

Judge Sheldon found that, under the offenses charged, a rebuttable presumption arose pursuant to 18 USC § 3142(e)(3) that no condition or combination of conditions would reasonably assure Ruiz's appearance and the safety of the community. Dkt 17 at 2. This is correct. Specifically, probable cause exists to believe that Ruiz committed the crime of carrying and using a firearm during and in relation to a crime of violence. See 18 USC § 3142(e)(3)(B), citing 18 USC § 924(c).

The rebuttable presumption thus pertains to the analysis. It is Ruiz's burden, then, to produce evidence rebutting the presumption that no condition or set of conditions that will reasonably assure the defendant's appearance and the safety of

any other person and the community. *United States v Sims*, 801 F Appx 324, 324–25 (5th Cir 2020, *per curiam*).

### b. Rebuttal of presumption

Judge Sheldon further found that Ruiz rebutted the presumption as to assurance of appearance and as to community safety. Dkt 17 at 2. Specifically, he found that Ruiz had been released on bond on the state charges in December 2019; his conditions included "GPS monitoring, curfew, no weapons, monthly reporting with his supervising officer, and no contact with the complaining witnesses"; and during the more than eleven months since release he "complied with all conditions of his bond." Id at 4. Likewise, Ruiz presented evidence that "he has lived in the Houston area for his entire life, has no prior criminal history, and has strong family and community support." Ibid.

This finding by Judge Sheldon is correct.

### c. Government proof requiring detention

The Government disavowed before Judge Sheldon that it sought detention on the basis of risk as to nonappearance. Dkt 27-3 at 62, 66. The Government lightly argued before this Court that Ruiz has since been in jail awaiting trial for four months, sensitizing him to what he potentially faces in the years ahead and possibly incentivizing him to flee. Perhaps, but no evidence supported the assertion. Speculation isn't enough. Detention based on perceived flight risk isn't appropriate here.

But Judge Sheldon found that the Government had established by "clear and convincing evidence" that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." Dkt 17 at 2. Specifically, he found that the "weight of evidence against the defendant is strong," and that Ruiz faces a "lengthy period of incarceration if convicted." Ibid. His findings in this regard were as follows:

> Defendant, age 25, while acting in his official capacity as a police officer with the Arcola Police Department, is charged with sexually assaulting two women on August 11, 2019 and November 16, 2019. The Government also

alleges that he possessed a firearm during both these crimes of violence and obstructed justice during the November 16 encounter by intentionally turning off the audio portion of the dashboard camera in his patrol vehicle.

If convicted, Defendant faces a real possibility of life imprisonment. His base offense level would be a Level 30 (97–121 months) but he would also be subject to several enhancements: four levels under § 2A3.1(b)(1) because the alleged offense involved force or threats; two levels under § 2A3.1(b)(3) because the victim was in Defendant's care, custody or supervisory control; four levels under § 2A3.1(b)(5) because he allegedly abducted his victim; six levels under § 2H1.1(b)(1) because the alleged offense was committed under the color of state law; and two levels under § 3C1.1 for the alleged obstruction of justice by turning off the audio portion of the dashboard camera in his patrol vehicle. If all these enhancements are applied, Defendant's offense level would be a Level 48 (life imprisonment begins at Level 43). Finally, these are calculations resulting from a conviction of only one of the two alleged victims and do not include the potential of two additional mandatory five-year consecutive sentences under 18 U.S.C. § 924(c) if convicted of Counts 3 and 5 in the Indictment.

At the hearings, the Government presented testimony showing that the weight of evidence against Defendant is strong. On November 16, 2019, Defendant pulled over a young woman late at night (who was under the influence of alcohol and potentially narcotics) and instructed her to follow him to another location. The victim tried driving to a different location, but Defendant pulled her over a second time. He

ordered her to follow him to a secluded area. While driving to the secluded area, the victim texted a friend stating that she thought she was going to die. Upon arrival, the Defendant allegedly forced the victim to perform oral sex. The victim alleges that Defendant told her that she needed to convince him not to have her thrown in jail. DNA evidence corroborated that Defendant's semen was found on the victim's pants. The Defendant does not deny this sexual encounter. He told his sister and investigators that it was consensual.

After Defendant was arrested in November 2019 related to the first alleged victim, a second alleged victim came forward. These two victims do not know each other. When the second victim's boyfriend was arrested on August 11, 2019, Defendant was called to the scene to translate and he subsequently drove the victim and her young son home in his police vehicle. At their house, Defendant allegedly locked the victim in her bedroom and then forcibly raped her. A family member came to the house and discovered Defendant in the victim's bedroom, although the family member did not witness the alleged rape. The victim was illegally present in the United States and Defendant allegedly threatened her if she told anyone about their sexual encounter. Defendant does not dispute being present at the victim's home but strongly denies either being in her bedroom and/or engaging in any sexual conduct with her.

. . .

After his arrest in November 2019, Defendant was facing a sentence of 2–20 years for the state offenses. Defendant was subsequently indicted by a federal grand jury on November 10, 2020. As discussed *supra*, he faces a real possibility of

> life imprisonment based on his presumptive score under the federal sentencing guidelines and the strength of the case against him. Therefore, there is clearly a change in circumstances from when he was released on bond in December 2019.
>
> Defendant asserts that conditions including home detention, weekly reporting to Pretrial Services, continued supervision with Fort Bend County, no firearms, and no contact with complaining witnesses—combined with his compliance with current bond conditions—demonstrate that there are conditions that will reasonably assure the safety of the community. While the Court acknowledges this is a persuasive argument, the Court respectfully disagrees.
>
> The two alleged victims of Defendant's forcible rape still live approximately three miles from the Defendant and fear daily for their safety. As described *supra*, the nature and circumstances of these two alleged rapes—including that Defendant obstructed justice related to the first victim and threatened the second victim if she reported the rape—show there are no conditions or combination of conditions of release that will reasonably assure the safety of any other person and the community.

Dkt 17 at 3–4.

The Court has independently reviewed the evidence and finds that the above recitation is factually correct. The Court has also independently assessed the factors prescribed by 18 USC § 3142(g) and further finds as follows.

*As to the nature and circumstances of the offense charged,* this factor weighs heavily in favor of detention. 18 USC § 3142(g)(1). The pertinent alleged crimes and related actions are extremely serious and involve the use of a firearm and physical violence.

*As to the weight of evidence,* this factor weighs in favor of detention. 18 USC § 3142(g)(2). The Government has credible evidence that Ruiz committed these acts, including (among other proof) DNA evidence.

*As to Ruiz's history and characteristics,* this factor weighs in favor of release. 18 USC § 3142(g)(3). Ruiz hasn't previously been convicted of any crimes and behaved himself during pretrial release on state charges.

*As to the nature and seriousness of the danger to any person or the community,* this factor weighs heavily in favor of detention. 18 USC § 3142(g)(4). True, Ruiz didn't commit any violent acts during the year that he was released on bond following the state charges. But given the nature of the alleged underlying conduct, the danger posed to the victims and to the community by any subsequent similar act is severe. And it simply can't be ignored that Ruiz allegedly committed these offenses while in the line of duty as a police officer. The charges themselves address facts that Ruiz has demonstrated the intent and ability to conceal and obstruct revelation of his conduct. Likewise, to commit these types of acts—and again, for purposes here, the weight of the evidence is strongly against him—he had to disregard and overcome specific legal training in addition to the usual moral and legal constraints against such conduct. It can't be assumed that his future good behavior is in any way assured.

4. Conclusion

The Government has met its burden to show by clear and convincing evidence that no condition or set of conditions of release would guarantee the community's safety.

The motion by Defendant Hector Aaron Ruiz to revoke the Magistrate Judge's detention order is DENIED. Dkt 27.

SO ORDERED.

Signed on April 15, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge